# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## JAMES RICHARD BLUE, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-A-960    Mark Fishburn, Judge**

---

**No. M2013-02251-CCA-R3-PC - Filed June 10, 2014**

---

The petitioner, James Richard Blue, Jr., appeals the denial of his petition for post-conviction relief. The petitioner pled guilty to sale of a Schedule II controlled substance over .5 grams and received an agreed-to sentence of twenty years in confinement as a Range III persistent offender. On appeal, he contends that his guilty plea was not entered knowingly and voluntarily due to the ineffective assistance of counsel. Specifically, he contends that trial counsel was ineffective for allowing him to plead as a Range III offender when, because of a failure to enter corrected judgments following a remand, he was in fact only a Range II offender. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Kyle Mothershead, Nashville, Tennessee, for the appellant, James Richard Blue, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dina Shabayek, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Procedural History**

The brief factual basis for the petitioner's conviction, as stated at the guilty plea hearing, is "this matter took place here in Davidson County on November 4th of 2010 where the [petitioner] sold a quantity of cocaine over .5 grams to an undercover police officer inside Club Traks." In a multi-count, multi-defendant indictment, the petitioner was originally charged with the sale of .5 grams or more of a Schedule II controlled substance, possession of .5 grams or more of a Schedule II controlled substance with the intent to sell in a drug-free school zone, and possession of drug paraphernalia. The State filed a Notice of Enhanced Punishment in the case, which established the petitioner's status as a Range III persistent offender. The State relied upon five prior convictions which arose from two separate cases: 96-C-1691 and 96-C-1373. Case 96-C-1691 involved two felony convictions, and Case 96-C-1373 involved three felony convictions. The State subsequently offered and the petitioner accepted a plea agreement in which the petitioner pled guilty to the sale of .5 grams or more of a Schedule II controlled substance, and the remaining charges were dismissed. The agreement also provided for a sentence of twenty years in confinement as a Range III offender.

At the guilty plea hearing, the trial court extensively covered the rights which the petitioner would be waiving should he choose to enter the guilty plea. Under oath, the petitioner acknowledged that he had read the plea petition and reviewed it with trial counsel, stating that he fully understood the contents of the agreement. The court reviewed the charges against the petitioner and noted the possible ranges of punishment for each crime should the petitioner choose to proceed to trial. The petitioner again acknowledged that he understood the charges and the possible sentences related to each of the separate charges. He testified that he understood that he was pleading guilty to one offense, with the others being dismissed, and that he understood the sentence which would be imposed pursuant to the plea agreement.

The petitioner stated on the record in the plea admission hearing that he had no complaints whatsoever with trial counsel's representation of him during the case. He related that he had an opportunity to discuss with trial counsel the facts and circumstances of the case, the applicable law, and the State's evidence against him. The petitioner testified that trial counsel had answered any questions he had concerning the case. The trial court accepted the guilty plea, and the petitioner began serving his sentence.

Thereafter, the petitioner filed a timely pro se petition for post-conviction relief alleging that his plea was not entered knowingly and voluntarily based upon the ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed. The main allegation of ineffective assistance of counsel, although others were mentioned in the petition, was that trial counsel failed to discover that the three convictions in Case 96-C-

1373 were in "limbo" and therefore could not be used to enhance the petitioner's range. The petitioner contends that he, on the advice of trial counsel, actually accepted a plea agreement as a Range III offender when in reality, he only qualified as a Range II offender.

At the post-conviction hearing, the petitioner and trial counsel both offered testimony. The petitioner testified that trial counsel was appointed to represent him in the case. The petitioner was on bond, and he met with trial counsel three times in the six to nine months the case was pending. The petitioner acknowledged that he and trial counsel did discuss the case. During one of these meetings, trial counsel informed the petitioner that the State had extended a plea offer which included a twenty-year sentence at 35%. The petitioner was confused as to why the other co-defendants listed in the indictment had been offered agreements with probation. When the petitioner questioned trial counsel, trial counsel replied that "the D.A. was not going to come up off of . . . twenty years at 35 percent."

According to the petitioner, he asked trial counsel about going to trial and was told that if he chose to go to trial, it would be a "short trial." The petitioner also testified that trial counsel failed to tell him possible punishment ranges if he chose to go to trial. The petitioner stated that "[i]t's not that I really wanted to go to trial, it's just I would have got a better order [than twenty years in confinement.]" Although he could not posit any possible defense strategies to combat the State's evidence, the petitioner insisted that he believed he would have been successful if he had proceeded to trial. He stated that he basically felt that trial counsel had not really represented him.

The petitioner testified that he did not understand the ranges of punishment he faced for the various charges for which he was indicted. He acknowledged that he stated that he did understand at the guilty plea hearing. He also asserted that he lied at the guilty plea hearing when he said that he had no problems with trial counsel's performance. According to him, he had earlier told trial counsel that he planned to tell the court about the issues with his representation, and trial counsel responded, "You better not." Trial counsel vehemently denied making the comment. The petitioner further testified that, in spite of what he said at the guilty plea hearing, he actually did not want to enter the plea but wanted to go to trial.

The petitioner testified that trial counsel brought him some of the discovery materials later in the representation. He claimed that he did not receive all of them until after he was in the Department of Correction. After he was incarcerated, the petitioner claimed that he hired a private investigator to work on his case. At some point following his conviction, the petitioner did receive all of the discovery materials, including the State's Notice of Enhanced Punishment. The notice listed a prior conviction in 2005 in Case 96-C-1691 for which the petitioner was not convicted. However, the petitioner was convicted in 1998 in that case of the charges listed. The State erred by listing the date of conviction of a co-defendant in the

case. Regardless of that error, the petitioner did acknowledge that he had five prior convictions in two cases. However, he testified that, because of a technicality, he now believed that only two were valid convictions. Accordingly, he felt that trial counsel was ineffective for allowing him to accept a plea agreement as a Range III offender.

Trial counsel also testified at the hearing that he represented the petitioner from general sessions court until the completion of the case. In contradiction to the petitioner's testimony, trial counsel testified that they met fifteen to twenty times, as well as communicated during approximately twenty to thirty phone calls. Trial counsel informed the petitioner that it was a very serious case and that it would be very difficult to formulate a defense because the petitioner had sold the drugs to an undercover policeman, whom the State planned to have testify at trial.

Trial counsel testified that he met with the detective in the case multiple times during the representation to try and get "some type of clemency" for the petitioner. Trial counsel testified he also took other steps to try and shorten the petitioner's sentence. However, the district attorney was not receptive.

Trial counsel stated that he verbally shared discovery with the petitioner. He noted that it was a massive file, including all the documentation for all co-defendants in the case, and trial counsel acknowledged that it was not until late in the representation that he actually gave the petitioner physical copies of the materials. He believed he gave the copies to the petitioner in December, prior to the February guilty plea. Trial counsel related that he "may have taken a little bit long to [give the petitioner a physical copy of discovery] than possibly can be considered proper" but noted that he had already verbally discussed the discovery with the petitioner. Trial counsel felt that there was nothing of great importance contained in the file. Most of the information related to the petitioner's prior arrest record and was in no way useful in formulating a defense strategy.

Trial counsel testified that the petitioner's case was set for March 2012. He clarified that the petitioner never conveyed to him that he wanted to go to trial. Rather, trial counsel simply set the case to gain the petitioner as much time as possible before going to jail. He related that, had the petitioner actually wished to proceed to trial, he would have hired an investigator and done more preparation on the case. Trial counsel related that he and the petitioner discussed his options, and he told the petitioner that he did not believe it was a good idea to go to trial. Trial counsel testified that the petitioner rejected the State's original plea offer. He then had more discussion with the State and was able to negotiate the offer which the petitioner eventually accepted.

During the argument portion of the hearing, the State conceded that the petitioner was

correct in that the enumerated 2005 conviction on the notice of enhancement was in error. However, it was not disputed that the petitioner did have five prior convictions in two separate cases. Counsel for the petitioner argued that only two of those convictions were valid and could be considered for range determination purposes.

To support his argument, the petitioner relied upon this court's opinion in his prior post-conviction case. In *James R. Blue v. State*, No. M2002-00383-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 289, at *1 (Tenn. Crim. App. Apr. 1, 2003), this court noted that in Case 96-C-1373, the petitioner pled guilty to three Class B felony drug offenses. Pursuant to the agreement, the petitioner received three ten-year sentences, which were to be served concurrently. At the hearing, the petitioner requested that he be allowed to begin serving his sentence the following day. The trial court allowed this with the specific condition that, if the petitioner failed to report the following day, the trial court would run the sentences consecutively instead of currently as the plea agreement specified. The petitioner failed to report, and the trial court entered judgments of conviction reflecting consecutive sentencing.[1] *Id*. at *3-4.

Afterwards, the petitioner filed a petition for post-conviction relief challenging the decision, but the post-conviction court denied relief. The petitioner then appealed to this court, and it was concluded that the change in the sentencing was erroneous. *Id*. at *17. This court reversed the change in sentences and remanded the case for entry of corrected judgments which reflected concurrent sentencing. *Id*. at *22. Apparently, the trial court failed to enter any corrected judgment forms. The petitioner contended, therefore, that the judgments, as entered, were invalid because they were in violation of this court's findings and, accordingly, could not be used to enhance his range. If those convictions are not considered, the petitioner actually qualifies only as a Range II offender.

After hearing the evidence presented and arguments of the parties, the post-conviction court entered a written order denying the petitioner relief. The petitioner has timely appealed that decision.

## Analysis

---

[1]There is some confusion in the record over what sentences the trial court imposed. The record is clear from the hearing that the trial court intended to make two of the three sentences consecutive if the petitioner failed to return to court the following day, which would result in an effective twenty-year sentence. However, the judgments in the record indicate that the three sentences were all ordered to be served consecutively, which results in a thirty-year sentence. Regardless, a determination of which sentences actually were entered is not relevant to our review, as this court in its earlier review ordered that the three sentences be served concurrently.

On appeal, the petitioner frames his two issues for review as follows: (1) whether he qualifies as Range II or Range III offender and (2) whether trial counsel was ineffective for allowing the petitioner to accept a Range III plea agreement. The petitioner argues that he qualifies only as a Range II offender and that trial counsel should have advised him of this fact. Because trial counsel did not, the petitioner contends that his guilty plea was not entered knowingly and voluntarily.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a

sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

In its order denying relief, the post-conviction court found that:

> Petitioner's main argument that he had ineffective assistance of counsel is that he was incorrectly advised that he was a Range III offender with five prior felony convictions. . . .

> However, the Court of Criminal Appeals has ruled that a court's failure to enter a final order is harmless if there is an oral pronouncement of the order from the bench. . . . In Case 96-C-1373, the Court of Criminal Appeals issued a ruling remanding the case to the trial court for entry of the amended judgments making the sentences run concurrently instead of two running consecutively. . . .

> Additionally, inferior courts must abide by orders made from a superior court. . . . A trial court has no authority to refuse to obey an order by the appellate court on remand. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process. . . . There would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decision. . . . The trial court in Case 96-C-1373 ha[d] no authority to ignore the order from the Court of Criminal Appeals ordering the entry of amended judgments in the case.

> Since the Court of Criminal Appeals merely remanded the case for entry of the amended judgment[s] instead of reversing the convictions, the convictions are valid and are not affected by the trial court's failure to enter the

-7-

amended judgments. Consequently, Petitioner has five prior felony convictions, thus, making him a Range III offender for sentencing purposes.

Again, on appeal, the petitioner limits his argument regarding ineffective assistance of counsel and the voluntariness of his guilty plea to his challenge of his status as a Range III offender. However, after reviewing the record, we find nothing in the record which preponderates against the post-conviction court's findings. The petitioner's attempt to circumvent his guilty plea by asserting a technical argument such as this is not well taken. The petitioner was well aware of the number of prior convictions that he had amassed when he stood before the court and entered the plea of guilty.

Initially, we note that the petitioner has actually failed to establish that the amended judgments of conviction were never entered. The exhibits portion of the record contains six judgments of conviction in Case number 96-C-1373. Three of those reflect concurrent sentences, the others reflect consecutive sentences. Each of the six judgments is dated September 24, 1998. We have no way of knowing which set of judgments were entered first. Specifically, with nothing more to go on than these forms, it is not sufficiently clear to establish that amended judgments of convictions were not entered and back-dated to the original entry date. It is the petitioner's burden to establish his entitlement to relief. Moreover, we would note that clearly the petitioner was not required to serve his three ten-year sentences in that case consecutively.

We agree with the post-conviction court's conclusion that the petitioner is in fact a Range III offender. We also agree that if the judgments in question were not actually valid, he would qualify only as a Range II offender. However, that is not the case before us presently. This court, in Case number 96-C-1373, did not invalidate the convictions, it merely remanded for a change in sentencing, a change which incidently benefitted the petitioner greatly. The convictions themselves were never reversed. Basically, this court's ruling served only to reinstate the petitioner's original concurrent sentences. And while the trial court may have neglected to ensure that the amended judgments were entered, that in no way affects the validity of the actual convictions. Those convictions being valid mean that the petitioner is a Range III offender because he has five prior felony convictions on his record. Based upon that finding, there was no deficiency in trial counsel's performance for advising the petitioner to accept the agreement.

The record establishes that trial counsel represented the petitioner in an effective manner. Trial counsel met with the petitioner multiple times and discussed the case and possible defenses. Trial counsel advised the petitioner accurately of his choices and chances of success with each option. According to his testimony, trial counsel went above and beyond in order to ensure that the petitioner received the lowest possible sentence that could

be obtained.

Even had we found that deficiency was established, the petitioner would be challenged to establish the prejudice prong of his claim. Here, the petitioner was facing two serious felony charges, as well as a misdemeanor. In addition to the possible misdemeanor sentence, the petitioner faced two possible convictions and sentences of eight to thirty years each. The transcript of the plea hearing and trial counsel's testimony at the post-conviction hearing establish that the petitioner wanted to enter the plea. He was aware of the consequences and the possible sentences. Based upon the record and trial counsel's testimony relating to the State's case against the petitioner, it appears that if the petitioner had chosen to go to trial, he faced an almost certain conviction of the multiple charges. The petitioner in fact acknowledged that he did not really want to proceed to trial, he just wanted a shorter sentence than he agreed to accept. That does not entitle him to post-conviction relief.

On the record before us, we can reach no other conclusion than that the petitioner entered his guilty plea knowingly and voluntarily. He stood before the trial court and stated his understanding of the agreement and his desire to enter the plea. The petitioner may not now disavow his sworn testimony.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE